FRED W. JONES, Jr., Judge.
After receiving notice that he would be demoted to a parttime school bus operator, Prentice Jones, Jr. sued the Richland Parish School Board to be declared a tenured operator. From a judgment rejecting his demand, Jones appealed. For the reasons hereinafter explained, we reverse.
In February 1980 Jones was employed by the Richland Parish School Board as a substitute school bus operator to transport college students. The regular driver, McConnell, resigned effective August 14, 1981, but did not drive the bus after August 6, 1981. The minutes of the school board dated August 4, 1981 indicate that Jones was appointed bus driver for the Northeast Louisiana University bus- from Manghan “effective for the 1981-82 school year.” Jones went on the school board payroll as a fulltime operator August 23, 1981. He transported his first load of students as a fulltime operator on August 26, 1981, the day that classes began for the 1981 fall semester.
Minutes of the school board meeting of July 3, 1984 recited the hiring of three new bus drivers for the board’s two college buses. On the same date the board employed Wayne Chapman as a college bus driver to share the Mangham-NLU route “effective 1984-85 school year.” On August 1, 1984, Henry A. Hazlitt, Director of Advisory Services for the school board, sent a letter advising Jones that his college bus driver’s position would become part-time beginning with the 1984 fall semester, and further stated that Jones had not turned in a monthly report for May, June or July. Chapman did not begin driving the bus until September 10,1984. On October 2, 1984 the school board took formal action to approve a “College Bus Driver Policy” which stated “the college bus driver position shall be parttime.”
La.R.S. 17:492 provides in pertinent part:
Each school bus operator shall serve a probationary term of three years reckoned from the date of his first employment in the parish in which the operator is serving his probation. During the probationary term the parish school board may dismiss or discharge any operator upon the written recommendation of the parish superintendent of schools accompanied by valid reasons therefor.
Any school bus operator found unsatisfactory by the parish school board at the expiration of the probationary period *1047 shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification such probationary school bus operator shall automatically become a regular and permanent operator in the employ of the school board of the parish in which he has successfully served his probationary term; ...
The procedure required for discharge must also be followed when the probationary school bus operator is demoted. Hayes v. Orleans Parish School Board, 225 So.2d 131 (La.App. 4th Cir.1969).
The trial judge ruled that Jones’ probationary term began on August 23, 1981 when he went on the school board payroll as a fulltime bus operator. He further held that the school board minutes of July 3, 1984, when considered along with the August 1, 1984 letter of the board’s Director of Advisory Services to Jones, were sufficient to inform Jones of his demotion and complied with the “valid reasons” requirement of R.S. 17:492.
We do not agree with the trial judge that the school board complied with the statutory requirement for demoting Jones. First, assuming that his probationary term began with his employment on August 23, 1981, the probationary term would have been completed on August 22, 1984, unless his status was changed in accordance with law prior to that time. The governing statute provides that “the parish school board may dismiss or discharge (or demote) any operator upon the written recommendation of the parish superintendent of schools accompanied by valid reasons therefor.”
No action of the Richland Parish School Board purporting to demote Jones was preceded by the required written recommendation of the Superintendent accompanied by valid reasons therefor. Construing a similar provision relating to probationary teachers, the court in Palone v. Jefferson Parish School Board, 306 So.2d 679 (La.1975) ruled the action of the school board invalid because this procedure was not followed. Also see Booker v. Richland Parish School Board, 393 So.2d 785 (La.App. 2d Cir.1981). Clearly the letter of Hazlitt, not the Superintendent, written to Jones after the school board meeting of July 3, did not comply with this requirement.
Furthermore, the school board minute entry of July 3, 1984, did not even purport to advise Jones of his demotion. It simply recited the hiring of three new bus drivers for the board’s two college buses. It did not mention Jones by name; did not indicate the college bus routes were being consolidated; and did not state that the college bus drivers were being demoted to part-time positions.
In Palone, supra, the Jefferson Parish School Board had abolished a number of assistant principalships to reduce a deficit. Neither Palone’s name nor his specific job was mentioned in the board’s resolution abolishing the assistant principalships. Palone was thereafter advised that his job had been affected. The board contended that the statute had been ultimately complied with when the Superintendent submitted a personnel roster to the board reflecting recommendations for new assignments of the demoted assistant principals to classroom teaching — their former positions. The Supreme Court dispensed with the argument of ultimate compliance with the following comment:
“The School Board apparently argues, however, that the school authorities ultimately complied with the statute when the Superintendent recommended the transfer of each of the assistant principals to his former position or one of equal status, and the Board formally approved. From our review of the record, we find that the School Board made the transfers after reviewing assignment rosters signed only by the Executive Assistant Superintendent. These rosters included numerous teachers other than petitioners, subject to routine assignment. It is true that the words, ‘Superintendent’s Recommendations,’ appear in the caption of the rosters, but no reasons for any of the transfers are given. Moreover, by the time the assignment *1048 rosters were submitted and approved, three of the petitioners, Palone, Heard, and Heslin, had already attained permanent status as assistant principals by virtue of three years service in those positions. See LSA-R.S. 17:444.
“We conclude that the action taken does not comply with the statute, requiring the written recommendations of the Superintendent, accompanied by valid reasons.” (emphasis added) 306 So.2d 679 at 682.
The action of the school board at its July 3, 1984 meeting cannot be construed as a demotion of Jones.
The school board argues that college bus drivers, as distinguished from those who transport kindergarten through 12th grade students, were never considered for tenure, since the purpose of the project is simply to furnish financial aid to college students. The statute governing probationary bus drivers makes no such distinction. Jones was not appointed to a special category of school bus drivers. He functioned under the same rules and regulations and had the same responsibilities and duties as all other school bus drivers.
We conclude that Jones completed his probationary period on August 22, 1984, and that he had not been demoted in accordance with law prior to that time. As a tenured school bus operator, he could only have been demoted in accordance with La. R.S. 17:493, which provides in pertinent part:
A. A permanent school bus operator shall not be removed from his position except upon written and signed charges of willful neglect of duty, incompetence, or immorality, or drunkenness while on duty, or physical disability to perform his duties, or failure to keep his transfer equipment in a safe, comfortable and practical operating condition, or of being a member of or contributing to any group, organization, movement or corporation that is prohibited by law or injunction from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city in which the school bus operator is employed. An additional ground for the removal from office of any permanent school bus operator shall be the abolition, discontinuance or consolidation of routes, but then only if it is found as a fact, after a hearing by the school board of the parish or city, that it is in the best interests of the school system to abolish, discontinue, or consolidate said route or routes....
D. In the event that one or more school bus operators must be removed due to the abolition, discontinuance or consolidation of routes, the principle of seniority shall apply, so that the last school bus operator hired to serve within the school system to be affected shall be the first to be removed.
The school board action of October 2, 1984 did not comply with this statutory requirement.
In conclusion, for the reasons set forth we reverse the judgment of the district court and render judgment declaring that Prentice Jones, Jr. is a tenured school bus operator of the Richland Parish School Board and, as such, is entitled to the rights and benefits of that position as accorded by law. Costs are assessed to the defendant, Richland Parish School Board, to the extent permitted by law.